IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

TONYA ATKINSON,

    Plaintiff,

v.

UPMC PASSAVANT,

    Defendant.

Case No. _____

**JURY TRIAL DEMANDED**

## COMPLAINT

NOW COMES Plaintiff, Tonya Atkinson, by and through her attorney, Sean L. Ruppert, Esq. of Kraemer, Manes & Associates LLC, and files this Complaint alleging as follows:

### I. Nature of the Action

1. Plaintiff brings this action under the Family Medical Leave Act ("FMLA") 29 U.S.C. § 2601 et seq., the Americans with Disabilities Act ("ADA") 42 U.S.C §§12101-12213, and the Pennsylvania Human Relations Act ("PHRA") 43 P.S. §§951-963.

### II. Jurisdiction and Venue

2. This action arises under the FMLA and ADA. This Court has jurisdiction over Plaintiff's discrimination claims pursuant to 28 U.S.C. § 1331.

3. This Court has supplemental jurisdiction over Plaintiff's discrimination claims under the PHRA pursuant to 28 U.S.C. § 1367(a).

4. At the time of the discrimination, Plaintiff was a resident and citizen of Pennsylvania, a substantial part of the events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore, this action is within the jurisdiction of the United States

District Court for the Western District of Pennsylvania and the venue is proper pursuant to 28 U.S.C. § 1391(b).

### III. Parties

5.      Plaintiff, Tonya Atkinson (hereinafter "Plaintiff"), is an adult individual with a primary residence located at 4251 Polaris Avenue, Lompoc, Santa Barbara County, California 93436.

6.      Defendant, UPMC Passavant (hereinafter "Defendant") is a Pennsylvania corporation located at 9100 Babcock Boulevard, Pittsburgh, Pennsylvania 15237. The location where Plaintiff worked was 1 St. Francis Way, Cranberry Township, Pennsylvania 16066.

### IV. Facts

7.      Plaintiff began working for Defendant in September 2014 as a Charge Nurse.

8.      In or around September 2016, Plaintiff received a positive review from her supervisor, Olivia Kaczynski-Martin, which included a "strong/solid" attendance record.

9.      In or around November 2016, Plaintiff was approved for eight (8) weeks of short term disability leave for several of her medical conditions, including Irritable Bowel Syndrome ("IBS").

10.     Plaintiff was out on short term disability for eight (8) weeks and returned to work on January 9, 2017.

11.     When Plaintiff returned to work as a Charge Nurse, she did not require an accommodation.

12.     Prior to Plaintiff's medical leave, she never received any discipline or reprimand for attendance related issues.

13. When Plaintiff returned to work from medical leave, Sandra Marks, Defendant's newly hired GI Unit Director, issued Plaintiff a verbal warning about her attendance issues.

14. Marks also removed Plaintiff from her administrative duties, which resulted in a reduction of pay.

15. Plaintiff's administrative duties were assigned to a back-up Charge Nurse.

16. The removal of administrative duties and reduction in pay had the effect of a demotion and Plaintiff voiced her complaints to Marks.

17. As a result of Plaintiff's complaints, Marks allowed Plaintiff to share duties by alternating weeks with another Charge Nurse, Marion Telesz.

18. However, this arrangement still resulted in a reduction in pay.

19. Charge Nurses who worked in Defendant's Cranberry location were required to obtain a Bachelor of Science in Nursing degree ("BSN"), which is not required of a Staff Nurse.

20. Plaintiff was replaced by a woman who does not have a BSN and is less qualified than Plaintiff.

21. Upon review of her dates of unexcused absences, Plaintiff realized that the unexcused absences on February 15, 2016 and November 14, 2016 were dates when she was out on approved leave under FMLA.

22. Plaintiff contacted UPMC Work Partners and Human Resources to informed these departments of the error.

23. Plaintiff was informed that Christi Morgan, Interim Unit Director, had input an incorrect code for some of her absences.

24. Plaintiff also learned that several unexcused absences in September 2016 were excused because she had contracted hand, foot and mouth disease and the Defendant's Infection Control protocol required her to stay home.

25. Additionally, a sixth unexcused absence was for a day when Plaintiff started work late, with prior approval by Kaczynski-Martin. Plaintiff was not absent on this day.

26. Upon learning this information, Plaintiff informed Marks about her demotion, and that the unexcused absences on February 15, 2016 and November 14, 2016 were dates when she was out on FMLA leave.

27. Marks responded that Plaintiff was "just a Staff Nurse" and was "the same as all the others."

28. Plaintiff was surprised at Marks' comments as Plaintiff was a Charge Nurse, had been performing the duties of the Charge Nurse since the commencement of her employment with Defendant, and her monthly work schedules listed Plaintiff as a Charge Nurse prior to her medical leave.

29. Plaintiff asked Marks to review her performance evaluations.

30. However, Marks stated that she did not speak with the physicians and staff because it would be unfair to ask them to "choose sides" and that Plaintiff's position was a Staff Nurse and not a Charge Nurse.

31. Marks did ask Plaintiff for proof of her claims regarding the absences, which she provided to Marks on January 9, 2017.

32. On January 12, 2017, Marks met with Plaintiff and Melanie Heuston, Chief Nursing Officer/Vice President of Patient Care, to discuss Plaintiff's concerns about the demotion and unexcused absences.

33. Heuston belittled Plaintiff and stated that it was within their rights to change Plaintiff's position.

34. During the meeting, Plaintiff made repeated requests for a Human Resources Representative to be present, however, her requests were denied.

35. After the meeting, Plaintiff informed Defendant's Human Resources department that she would not return to work unless she was guaranteed a safe, non-harassing work environment.

36. Defendant's Human Resources department never responded to Plaintiff's concerns about returning to work and Defendant stopped issuing Plaintiff's pay.

## V. Allegations
### Count I
### Disability Discrimination in Violation of the ADA and PHRA

37. The preceding paragraphs are incorporated herein as if set forth at length.

38. Defendant is an employer pursuant to the provisions of the ADA and PHRA.

39. Plaintiff is an employee, and therefore protected by the ADA against retaliation for engaging in Protected Activity.

40. Plaintiff is a member of a protected class as she suffers from Irritable Bowel Syndrome ("IBS").

41. Plaintiff suffered an adverse employment action when Defendant demoted and subsequently constructively discharged Plaintiff as Defendant perceived Plaintiff as disabled.

42. Defendant issued Plaintiff a verbal warning after she returned from eight (8) weeks of short term disability leave.

43. Defendant removed Plaintiff from her administrative duties, which resulted in a reduction of pay.

44. Defendant also required Plaintiff to share duties by alternating weeks with another Charge Nurse, Marion Telesz.

45. On January 12, 2017, Marks met with Plaintiff and Heuston to discuss Plaintiff's concerns about the demotion and unexcused absences.

46. Heuston belittled Plaintiff and stated that it was within their rights to change Plaintiff's position.

47. During the meeting, Plaintiff made repeated requests for a Human Resources Representative to be present, however, her requests were denied.

48. After the meeting, Plaintiff informed Defendant's Human Resources department that she would not return to work unless she was guaranteed a safe, non-harassing work environment.

49. Defendant's Human Resources department never responded to Plaintiff's concerns about returning to work and Defendant stopped issuing Plaintiff's pay.

50. Plaintiff suffered damages, including emotional damages, directly and proximately caused by Defendant's actions.

WHEREFORE, Plaintiff respectfully request that this Court enter judgment in her favor, and against the Defendant, and award all damages available at law and in equity, including: lost wages, front pay, compensatory damages, punitive damages, court costs, attorney fees, pre-judgment and continuing interest, and any other relief that the Court deems necessary and proper.

## COUNT II
## Retaliation in violation of the ADA and PHRA

51. The preceding paragraphs are incorporated herein as if set forth at length.

52. Defendant is an employer pursuant to the provisions of the ADA and PHRA.

53. Plaintiff is an employee, and therefore protected by the ADA against retaliation for engaging in Protected Activity.

54. Plaintiff is a member of a protected class as she suffers from Irritable Bowel Syndrome ("IBS").

55. Plaintiff suffered an adverse employment action when Defendant terminated Plaintiff.

56. Defendant issued Plaintiff a verbal warning after she returned from eight (8) weeks of short term disability leave.

57. Defendant removed Plaintiff from her administrative duties, which resulted in a reduction of pay.

58. Defendant also required Plaintiff to share duties by alternating weeks with another Charge Nurse, Marion Telesz.

59. Plaintiff contacted UPMC Work Partners and Human Resources to informed these departments of errors regarding her alleged unexcused absences.

60. On January 12, 2017, Marks met with Plaintiff and Heuston to discuss Plaintiff's concerns about the demotion and unexcused absences.

61. Heuston belittled Plaintiff and stated that it was within their rights to change Plaintiff's position.

62. During the meeting, Plaintiff made repeated requests for a Human Resources Representative to be present, however, her requests were denied.

63. After the meeting, Plaintiff informed Defendant's Human Resources department that she would not return to work unless she was guaranteed a safe, non-harassing work environment.

64. Defendant's Human Resources department never responded and stopped issuing Plaintiff's pay in retaliation for making complaints about her demotion, and absences.

65. Defendant's Human Resources department never responded to Plaintiff's concerns about returning to work and Defendant stopped issuing Plaintiff's pay.

WHEREFORE, Plaintiff respectfully request that this Court enter judgment in her favor, and against the Defendant, and award all damages available at law and in equity, including: lost wages, front pay, compensatory damages, punitive damages, court costs, attorney fees, pre-judgment and continuing interest, and any other relief that the Court deems necessary and proper.

## Count III
### Retaliation in Violation of the FMLA

66. The preceding paragraphs are incorporated herein as if set forth at length.

67. Plaintiff requested and was approved for FMLA leave for February 15, 2016 and November 14, 2016.

68. When Plaintiff returned to work from FMLA leave, Defendant retaliated against Plaintiff.

    a  When Plaintiff returned to work from medical leave, Marks issued Plaintiff a verbal warning about her attendance issues.

      b      Marks also removed Plaintiff from her administrative duties, which resulted in a reduction of pay.

      c      Plaintiff received two unexcused absences for February 15, 2016 and November 14, 2016 when she was out on FMLA leave.

69.    Marks asked Plaintiff for proof of her claims regarding the absences, which she provided to Marks on January 9, 2017.

70.    On January 12, 2017, Marks met with Plaintiff and Heuston to discuss Plaintiff's concerns about the demotion and unexcused absences.

71.    Heuston belittled Plaintiff and stated that it was within their rights to change Plaintiff's position.

72.    During the meeting, Plaintiff made repeated requests for a Human Resources Representative to be present, however, her requests were denied.

73.    After the meeting, Plaintiff informed Defendant's Human Resources department that she would not return to work unless she was guaranteed a safe, non-harassing work environment.

74.    Defendant's Human Resources department never responded to Plaintiff's concerns about returning to work and Defendant stopped issuing Plaintiff's pay.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment for the Plaintiff, and against the Defendant for: loss of wages; front pay as deemed appropriate by the court; liquidated damages; plaintiff's legal fees; pre-judgment and continuing interest; court costs; and any other such relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Sean L. Ruppert
Sean L. Ruppert, Esq.
Pa. ID. No. 314380

**KRAEMER, MANES & ASSOCIATES, LLC**
U.S. Steel Tower
600 Grant Street, Suite 4875
Pittsburgh, PA 15219
412.626.5550 (p)
412.637.0144 (f)
sr@lawkm.com

*Attorney for Plaintiff*